1

2

3

4

5
UNITED STATES DISTRICT COURT

6
EASTERN DISTRICT OF WASHINGTON

7
SCOTT M. INGRAM,

8
                        Plaintiff,

9
        v.

10
CAROLYN W. COLVIN, Acting
Commissioner of Social Security

11
Administration,

12
                        Defendant.

NO: 12-CV-0610-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

13

14
        BEFORE THE COURT are the parties' cross-motions for summary

15
judgment (ECF Nos. 14 and 16).  Plaintiff is represented by Dana C. Madsen.

16
Defendant is represented by Richard M. Rodriguez.  This matter was submitted for

17
consideration without oral argument.  The Court has reviewed the administrative

18
record and the parties' completed briefing and is fully informed.  For the reasons

19
discussed below, the Court grants Defendant's motion and denies Plaintiff's

20
motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3    404.1520(b); 416.920(b).

4          If the claimant is not engaged in substantial gainful activities, the analysis

5    proceeds to step two.  At this step, the Commissioner considers the severity of the

6    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7    claimant suffers from "any impairment or combination of impairments which

8    significantly limits [his or her] physical or mental ability to do basic work

9    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11   however, the Commissioner must find that the claimant is not disabled.  *Id.*

12         At step three, the Commissioner compares the claimant's impairment to

13   several impairments recognized by the Commissioner to be so severe as to

14   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

15   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16   severe than one of the enumerated impairments, the Commissioner must find the

17   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18         If the severity of the claimant's impairment does meet or exceed the severity

19   of the enumerated impairments, the Commissioner must pause to assess the

20   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on March 14, 2010, alleging a disability onset date of December 17, 2008.  Tr. 117-129.  These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing.  Tr. 77-80, 84-91.  A hearing was held before an Administrative Law Judge on March 17, 2011.  Tr. 36-72.  The ALJ rendered a decision denying Plaintiff benefits on September 16, 2011.  Tr. 18-31.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2014.  Tr. 23.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2008, the alleged onset date.  Tr. 23.[1]  At step two, the ALJ found

---

[1] Plaintiff stipulated to an amended alleged onset date of October 1, 2009 during the hearing.  Tr. 43.  The Court will assume that the ALJ intended to find that

that Plaintiff had severe impairments consisting of a right thumb sprain and lumbar

degenerative disc disease status-post surgeries.  Tr. 23.  At step three, the ALJ

found that Plaintiff's severe impairment did not meet or medically equal a listed

impairment.  Tr. 23.  The ALJ then determined that Plaintiff had the residual

functional capacity to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except he is limited to occasional stooping and crouching; he could
> perform occasional fine manipulation with the right hand; and he
> should never climb ladders, ropes, or scaffolds.

Tr. 24.  At step four, the ALJ found that Plaintiff was able to perform past relevant

work as a security guard.  Tr. 29.  The ALJ also made a finding in the alterative at

step five that Plaintiff could perform the representative occupation of telephone

solicitor and that such an occupation existed in significant numbers in the national

economy.  Tr. 29-30.  In light of these primary and alternative findings, the ALJ

concluded that Plaintiff was not disabled under the Social Security Act and denied

his claims on that basis.  Tr. 31.

The Appeals Council denied Plaintiff's request for review on October 12,

2012, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

---

Plaintiff had not engaged in substantial gainful activity since this amended alleged

onset date.

ISSUES

Plaintiff raises three issues for review:

1. Whether the ALJ properly considered the opinions of treating physician Dr. Kinsley Ugorji, M.D.;

2. Whether the ALJ properly considered the findings of vocational examiner Robert Cornell; and

3. Whether the ALJ erred in discrediting Plaintiff's testimony about the limiting effects of symptoms related to his thumb and back impairments.

ECF No. 14 at 14-18.

DISCUSSION

**A. The ALJ Did Not Err in Rejecting Dr. Ugorji's Opinion**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their area of expertise over that of non-specialists. *Id.* (citations omitted). A physician's opinion may be entitled to little

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

or no weight, when it relates to a matter beyond her or his area of specialization. *Id.* at 1203, n. 2 (citation omitted).

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). An ALJ may also reject a treating physician's opinion which is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 553 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation and citation omitted).

Plaintiff was treated by Dr. Kinsley Ugorji, M.D. in December 2010 and February 2011 for back pain and reduced sensation in his lower extremities.

Following Plaintiff's latter visit, Dr. Dr. Ugorji completed a DSHS functional assessment form indicating that Plaintiff could stand for one hour in an eight hour work day, sit for two hours in an eight hour work day, lift 30 pounds occasionally, and lift 20 pounds frequently.  Tr. 400.  Dr. Ugorji indicated that these limitations could be expected to last for six months.  Tr. 400.

The ALJ rejected Dr. Ugorji's opinions on the grounds that they were (1) contradicted by the findings of several other physicians; (2) based primarily upon Plaintiff's own statements about the severity of his symptoms; and (3) inconsistent with Dr. Ugorji's objective medical observations.  Specifically, the ALJ stated:

> The claimant presented to Kingsley Ugorji, M.D., in December 2010 with complaints of reduced sensation in both lower extremities and "electric shock" pain in his back.  Dr. Ugorji assessed him with low back pain consistent with mild intermittent compression of the cord and referred him to a neurosurgeon.  The claimant returned to Dr. Ugorji in February 2011 but did not seek a neurosurgeon due to the cost.  The claimant reported that he was able to perform all activities of daily living but could only sit or stand for one hour due to pain.  Dr. Ugorji found no skeletal tenderness or deformity and no motor or sensory deficits, and he sent the claimant to obtain spinal MRIs.  The claimant's thoracic MRI was normal and his lumbar MRI showed mild degenerative changes with some foraminal stenosis and mild flattening of foraminal nerve roots.  His thoracic and lumbar x-rays both showed mild findings.  Despite these objective reports, Dr. Ugorji completed a functional capacity report of the claimant and limited him to standing for one hour and sitting for two hours in an eight-hour day.  Dr. Ugorji's assessment appears to be based primarily on the claimant's subjective report as it mimics what the claimant stated and is inconsistent with his own objective findings.  The undersigned also notes that Dr. Ugorji only limited the claimant to lifting 20 pounds frequently and 30 pounds occasionally, an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

assessment that seems inconsistent with an inability to sit for more than two hours or stand for one hour a day.

Tr. 27-28.

Because Dr. Ugorji's opinion was contradicted by that of Dr. Kenneth Young, *see* Tr. 423, the ALJ need only have provided specific and legitimate reasons supported by substantial evidence to reject it. *Bayliss*, 427 F.3d at 1216. That standard is satisfied here. As the ALJ correctly noted, Dr. Ugorji's findings with respect to Plaintiff's ability to sit and stand for limited periods were based upon Plaintiff's own statements about the extent of his limitations—statements which the ALJ found not to be fully credible.[2] The ALJ did not err in rejecting Dr. Ugorji's opinions on this basis. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

Nor did the ALJ err in citing inconsistencies between Dr. Ugorji's functional assessment and his objective medical findings as a basis for rejecting his opinions. As the ALJ observed, MRIs ordered by Dr. Ugorji's document mostly "normal" and "unremarkable" findings. Tr. 414-15. The MRI of Plaintiff's thoracic spine revealed "[n]ormal appearance of the thoracic cord without cord compression,

_____

[2] The ALJ's adverse credibility finding is addressed in Section C below.

1    abnormal cord signal, or significant spinal stenosis." Tr. 414.  The MRI of

2    Plaintiff's lumbar spine revealed only "mild" postoperative fibrosis, "mild" (right)

3    and "moderate" (left) neural foraminal stenosis, and a "small" annular disc bulge.

4    Tr. 414.  These findings stand in sharp contrast to Dr. Ugorji's responses to the

5    questions posed on the DSHS functional assessment form.  In sum, "[t]he

6    incongruity between [Dr. Ugorji's] [q]uestionnaire responses and [his] medical

7    records provides an additional specific and legitimate reason for rejecting [Dr.

8    Ugorji's] opinion of [Plaintiff's] limitations."  *Tommasetti*, 553 F.3d at 1041.

9    **B. Mr. Cornell**

10        Robert R. Cornell performed a "vocational evaluation" of Plaintiff on April

11   25, 2011.  Tr. 387-90.  The purpose of this assessment was to "clarify [Plaintiff's]

12   dexterities and their impact on employability."  Tr. 387.  Based upon Plaintiff's

13   performance on several tests which measure dexterity in an occupational setting,

14   Mr. Cornell concluded that Plaintiff "would have difficulty functioning in jobs

15   requiring the use of his upper extremities for reaching, handling and fingering

16   activities.  It appears as though he can only use his right hand for a short period of

17   time, and even at that, he experiences [an] increase of pain and cramping."  Tr.

18   390.

19        As Plaintiff acknowledges, Mr. Cornell is not an "acceptable medical

20   source" within the meaning of 20 C.F.R. §§ 404.1513(a) and 416.913(a).  Instead,

Mr. Cornell is an "other source" as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d). *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). As an "other source," Mr. Cornell's opinions about the nature and severity of Plaintiff's impairments are not entitled to controlling weight. SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). Thus, the ALJ need only have provided a "germane reason" for rejecting his opinions. *Molina*, 674 F.3d at 1111.

The ALJ gave the following explanation with regard to Mr. Cornell's opinion:

> The evaluator, Robert Cornell, MS, opined that he claimant "would have difficulty reaching, handling, and fingering." The undersigned cannot assign significant weight to Mr. Cornell's opinion due to his status as a non-accepted medical source, but his statement that the claimant "would have difficulty" with reaching, handling, and fingering, is not inconsistent with the evidence. However, a finding that the claimant would have difficulty does not indicate that he would be unable. The evidence as a whole suggests that his right hand injury would cause some difficulty in manipulation, but not to the extent that he must avoid manipulative activities altogether.

Tr. 27. This qualifies as a germane reason supported by substantial evidence. The ALJ did not err in declining to adopt Mr. Cornell's opinion in full.

## C. Adverse Credibility Determination

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

In the event that an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F .3 d 947, 958 (9th Cir. 2002). In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing."

1    *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation

2    omitted).  The ALJ "must specifically identify the testimony she or he finds not to

3    be credible and must explain what evidence undermines the testimony."  *Holohan*

4    *v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

5         Plaintiff claims that the ALJ failed to provide clear and convincing reasons

6    supported by substantial evidence for discrediting his testimony about the limiting

7    effects of his right hand impairment and his back impairment.  At the hearing,

8    Plaintiff testified that his hand impairment causes his right (dominant) thumb to

9    cramp when he attempts to grasp things. Tr. 48.  He further testified that he wears

10   a brace when his thumb bothers him, that he can only write two to three lines

11   without the brace, and that he has difficulty opening large jars (though not smaller

12   containers like one-liter soda bottles). Tr. 48-49.  With regard to his back

13   impairment, Plaintiff testified that his symptoms had worsened over the past two

14   years, that his level of pain ranged from a level 6 to a level 10 on a scale of 1 to 10,

15   and that he experiences a "shocking jolt" in his lower back with every step which

16   radiates through his legs and down to his toes. Tr. 45.  He further testified that he

17   could only sit or stand for 15-20 minutes at a time, that he could walk less than one

18   block, and that he could lift and/or carry no more than 10-15 pounds. Tr. 46.

19   Finally, Plaintiff testified that he needed to lie down at least five times per day for

20   a period of 15-20 minutes to alleviate his pain symptoms. Tr. 47.

1      Contrary to Plaintiff's assertions, the ALJ provided a number of clear and

2  convincing reasons for rejecting this testimony.  First, the ALJ noted that, despite

3  his claims of disabling pain and cramping in his hand, Plaintiff had not been to the

4  doctor for thumb, wrist or hand pain since November 2009.  Tr. 26.  To the ALJ,

5  this suggested that Plaintiff's pain was not as significant as he had alleged.  Tr. 26-

6  27.  Second, the ALJ observed that, despite his hand impairment, Plaintiff admitted

7  to playing his drum set at least once per day.  Tr. 27.  As the ALJ aptly noted,

8  "[Plaintiff's] testimony of drumming is notably inconsistent with his reports of

9  right thumb pain."  Tr. 27.  Finally, the ALJ provided an exhaustive review of

10  Plaintiff's medical records concerning the nature, severity and effect of Plaintiff's

11  hand and back symptoms.  Among the most notable records identified by the ALJ

12  are (1) a July 2011 report from Dr. Young stating that Plaintiff had "good strength,

13  dexterity, and range of motion" in his right hand, that he "functioned surprisingly

14  well," that he was probably "still in the normal range," and that he would not be

15  restricted in work activities; (2) a November 2010 report by Mark Triplett, PA-C,

16  documenting that Plaintiff exercised daily for a total of five to ten hours per week;

17  and (3) a July 2009 report from Dr. Mueller commenting that, based upon

18  Plaintiff's subjective reports, low back pain was not a "current active problem" for

19  Plaintiff.  Having thoroughly reviewed the record, the Court concludes that these

20  reasons are supported by substantial evidence.  The ALJ did not err in relying upon

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

them as a basis for not fully crediting Plaintiff's testimony about the disabling effects of his hand and back impairments.  Accordingly, Defendant is entitled to summary judgment.

**IT IS HEREBY ORDERED:**

    1.  Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

    2.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

    The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

    **DATED** October 4, 2013.



THOMAS O. RICE
United States District Judge